Richard Walter **RICKER** and Oswald
Bryan Salyer

v.

The **UNITED STATES.**

No. 23–67.

United States Court of Claims.

June 14, 1968.

Penrose Lucas Albright, Washington, D. C., attorney of record, for plaintiffs. Mason, Mason & Albright, Washington D. C., of counsel.

J. Michael Gottesman, Washington, D. C., with whom was Asst. Atty. Gen. Edwin L. Weisl, Jr., for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

DURFEE, Judge.

Plaintiffs, retired Navy captains, seek to recover the difference between their retired pay and the active duty pay and allowances of Navy captains, commencing July 1, 1965, and continuing until such date as judgment may be entered. It is plaintiffs' position here that their retirement was illegally effected on June 30, 1965, because a continuation board convened under the Act of August 11, 1959, P.L. 86–155, 73 Stat. 333 (which failed to recommend them for continuation on the active list, and thus caused their retirement) included as a member an officer who was not competent to sit thereon because he had been a member of the prior continuation board which considered officers in plaintiffs' category.

The reason that the officer who sat on plaintiffs' Board was ineligible therefor, according to plaintiffs, is that the Act of August 11, 1959 (hereafter referred

to as the Hump Act [1]) expressly requires that the provisions of Chapter 543 of Title 10, U.S.C., 70A Stat. 336–345, apply to boards convened under the Hump Act. In turn, Section 5702(f) of Chapter 543, Title 10 [70A Stat. 338] expressly provides that no officer may be a member of two successive boards convened under this section for the consideration of staff corps officers for promotion to the same grade or for the consideration of staff corps captains for continuation on the active list.

The following statutory provisions are relevant in this case:

The Hump Act provides, in pertinent part, as follows: [73 Stat. 333–334]:

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That (a) the Secretary of the Navy, may, whenever the needs of the service require, convene selection boards, or direct boards convened under Chapter 543 of title 10, United States Code, to recommend for continuation on the active list officers of the Regular Navy and the Regular Marine Corps described in subsection (c) and shall convene or direct such boards to recommend for continuation on the active list officers of the Regular Navy and the Regular Marine Corps described in subsections (e)–(g). Except as otherwise provided in this section, *the provisions of Chapter 543 of title 10, United States Code (other than section 5701(e)), concerning boards to recommend captains, commanders, colonels, or lieutenant colonels for promotion, apply to each board convened under this subsection.* [Emphasis supplied]

Section 5702 of Chapter 543, Title 10, U.S.C., 70A Stat. 338, provides in pertinent part, as follows:

(f) *No officer may be a member of two successive boards convened under*

*this section* for the consideration of officers for promotion to the same grade or for the consideration of captains for continuation on the active list. [Emphasis supplied]

Each plaintiff in this case was serving in the grade of Captain in the Chaplain Corps of the Regular Navy at the time of his retirement, *i.e.,* a staff position. Both were retired because they were not recommended for continuation in the approved report of a continuation board convened in the fiscal year of 1965 by the Secretary of the Navy pursuant to the Hump Act, supra.

The continuation board which failed to recommend plaintiffs for continuation consisted of three officers, one of whom (Rear Admiral Joseph F. Dreith), had been a member of the prior board considering captains of the Chaplain Corps for continuation on the active list of the Regular Navy. This fact is in direct violation of the statutory mandate that "no officer may be a member of two successive boards" convened under the Hump Act. We think that this violation of a clear statutory mandate renders plaintiffs' separations illegal.

Defendant, however, argues that the continuation board in question was legally constituted because the Hump Act was not violated. This contention is based on a somewhat astonishing construction of the Hump Act. Defendant first points to the parenthetical in the Hump Act which excludes boards recommending *line* officers from the requirement that no officer shall sit on two successive boards. Defendant then contends that the failure to exclude boards for *staff corps* officers, such as chaplains, from this requirement was a mere Congressional "oversight". Strangely enough, defendant offers no legislative material to support this contention. It merely argues that the statute, in its

---

1. The Hump Act was enacted to provide equitable opportunity for promotion to officers of the Navy and Marine Corps who are in or behind the "hump". The "hump" consists of the large group of officers who were initially commissioned during the four years of World War II. 105 Cong.Rec. 3227.

present form, results in a meaningless differentiation between staff officers and officers of the line, *vis-a-vis* continuation. Even assuming, for the time being, that there is no valid distinction between line and staff officers, we would only be left with the fact that Congress could have promulgated a better and more meaningful statute. Nevertheless, to improve legislation is certainly not the function or responsibility of the court. "[O]ur problem is to construe what Congress has written. After all, Congress expresses its purpose by words. It is for us to ascertain—neither to add nor to subtract, neither to delete nor to distort". 62 Cases, More or Less Each Containing Sixty Jars of Jam v. United States, 340 U.S. 593, 596 71 S.Ct. 515, 518, 95 L.Ed. 566 (1951) (per Frankfurter, J.). Since Congress thought there was a reason to apply the requirement to staff corps continuation boards, but not to line officer boards, we cannot say otherwise. Defendant would have us delete or ignore the clear language of the statute. We must adhere to the rule stated in Prudential Ins. Co. of America v. United States, 162 Ct.Cl. 55, 319 F.2d 161 (1963): "It is fundamental that an unambiguous statute should be given effect according to its plain and obvious meaning". 162 Ct.Cl. at 65, 319 F.2d at 166.

It should be emphasized that this is not a case where the words are ambiguous; nor is it the case where legislative history indicates a meaning other than that revealed by the literal language. We may be able to interpret and construe ambiguous language to give effect to Congressional intent, but we cannot ignore an entire, non-ambiguous sentence as if it did not exist, especially in view of the total lack of any evidence of intent to the contrary. In this regard, the cases cited by defendant, re the interpretation of an ambiguous statute, are not in point. We are bound by the clear, unmistakable language of the Act.

In addition, it must be pointed out that the statute does not really lead to a meaningless differentiation between line officer continuation boards and staff officer continuation boards as defendant contends. On the one hand, Chapter 543 of Title 10 requires, *inter alia*, that line officer continuation boards must consist of a minimum of nine officers serving in the grade of rear admiral or above. Moreover, the line officer board should include, *in addition to* the nine rear admirals required, alternate officers of the same designation and classification as the officers eligible for consideration. On the other hand, staff officer continuation boards need consist of only from three to nine officers serving in the grade of rear admiral. Furthermore, the Secretary may designate qualified line officers to sit on staff officer continuation boards if ever there is an insufficient number of qualified staff corps officers. Thus, in terms of sheer availability of qualified officers for each type of board, there is a rational distinction between the two types of boards to support (if necessary) the distinction clearly drawn by Congress.

In sum, there is only one possible interpretation of the Hump Act, and that interpretation demonstrates that the continuation board in question was not legally constituted. Consequently, the separation of plaintiffs, resulting from the action of this board, was fatally defective.

Defendant argues in the alternative, that even if the board was illegally constituted, plaintiffs were not prejudiced because the Hump Act required an officer to appear before a continuation board only once. The fact that Rear Admiral Dreith sat on two successive continuation boards could not possibly have prejudiced plaintiffs, according to the Government's argument. This argument is faulty for several reasons. In the first instance it ignores the possibility that Congress was attempting to prevent a general form of prejudice; that is to say, the restriction against an officer sitting on successive continuation

boards will lessen the probability of cliques becoming established and perpetuated.

Secondly, we specifically held in Henderson v. United States, 175 Ct.Cl. 690, 699 (1966), cert. den. 386 U.S. 1016 (1967), that the fact of an illegally constituted Air Force "Faculty Board" affected substantial rights of plaintiff and rendered the proceedings fatally defective. See also, United States v. Brown, 206 U.S. 240, 244, 27 S.Ct. 620, 51 L.Ed. 1046 (1907) (per Holmes, J.)

Finally, it is well known that an agency is bound by its own regulations. See, e. g., Hamlin v. United States, Ct.Cl., 391 F.2d 941, decided March 15, 1968. In the instant case, it was not an administrative regulation which was violated, but a mandate of Congress. It follows, *a fortiori*, that the separations were illegal. "[T]he only way an officer of the armed services can be dismissed therefrom is by those methods specifically spelled out by the statutes". Hankins v. United States, No. 20–67, decided March 15, 1968, slip op. at 7, quoting from Boruski v. United States, 155 F.Supp. 320, 324, 140 Ct.Cl. 1, 6 (1957).

The violation here is not merely a "technical" one as was described in Greenway v. United States, 163 Ct.Cl. 72, 80 (1963). The legality of composition of a military board affects substantial rights of a serviceman. Henderson v. United States, supra.[2]

In conclusion, we hold that the board which failed to recommend plaintiffs for continuation was illegally constituted, thereby rendering the proceedings fatally defective. For this reason, we grant plaintiffs' motion for summary judgment, and deny defendant's cross-motion for summary judgment. Plaintiffs are entitled to recover pay and allowances since their separation, less appropriate offsets, and judgment is entered to that effect. The amount of recovery will be determined under Rule 47(c).

NICHOLS, Judge (concurring):

This case presented me with difficulties, which I have resolved, but I do not see the path to decision as a mere following of settled precedents.

First, defendant has cited Rector, etc., Holy Trinity Church v. United States, 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226 (1892), a case I think should be oftener followed than it is. Here it is not in point, for this is not a *Holy Trinity Church* situation. In my concurring opinion in Eastern School et al. v. United States, 381 F.2d 421, 438, 180 Ct. Cl. 676, 706 (1967), I indicate what I think the *Holy Trinity Church* case really stands for. I have faith that we will follow *Holy Trinity Church* when it is applicable as a precedent.

Second, by the pertinent statutes, Selection Boards merely *recommend* Public Law 86–155, 73 Stat. 333, 10 U. S.C. §§ 5701, 5702. If they lack power to *decide,* I question if United States v. Brown, 206 U.S. 240, 244, 27 S.Ct. 620, 51 L.Ed. 1046 (1907), is as conclusive as plaintiff imagines. The rule of *Brown* is, if a person disqualified by law to serve on a court-martial serves thereon, the sentence of that court-martial is void for lack of jurisdiction, and therefore is exposed to collateral attack in a back pay suit in this court. It could be a *non sequitur* that a nonpenal personnel action of a Service Secretary is likewise void if based on mere recommendation of a Board having a disqualified member. Recently in Juhl v. United States, 383 F.2d 1009, 181 Ct.Cl. 210 (1967) cert. granted April 29, 1968, we

2. We might add that the case of Application of Wiechert, 152 U.S.P.Q. 247, 370 F.2d 927 (1967), cited by defendant at oral argument, is not relevant here. The court (majority) merely held in that case that its own jurisdictional statute limits it to review of decisions of the "board". The question of whether the board was legally constituted was not before the court. 152 U.S.P.Q. at 255, 370 F.2d at 938.

had to consider the jurisdiction of courts-martial in their historic setting. Whether we were right or wrong in that particular case, one cannot but see that the law applicable there has evolved in that sole area and has no relation to any other.

Third, I feel qualms about applying a law outside its literal command when I do not know its purpose. Despite the researches of counsel, their speculations, and ours, we really do not know why the Congress allows the same officer to sit on two successive "Hump Boards" when it is one that deals with line officers but forbids him to do so when it deals with staff officers. If we do not know the purpose, we do not know whether invalidating the Secretary's personnel action is a proper way to implement it. The Congress did not expressly say this was to be the consequence of a breach. I am willing, however, to presume that in case of any tribunals having the powers imputed to these Boards, any provision respecting their makeup must be intended to protect those whose careers they are supposed to extend or terminate. In John A. Fletcher, Jr. v. United States, 183 Ct.Cl. ——, 392 F.2d 266 (1968), we likewise presumed that regulations governing procedure before appeal boards in civilian adverse actions were intended for protection of employees, no other purpose appearing. The appropriate consequence for a breach therefore was invalidity of the removal. And so in this case. If it should appear that the involved provision was enacted, e. g., because service on "Hump Boards" was so irksome it should be rotated among senior officers, I think a different result would be indicated, but that would have to be shown.

Finally, I note that in the *Brown* case, and in our own decision cited by the court herein, Henderson v. United States, 175 Ct.Cl. 690 (1966), cert. denied 386 U.S. 1016, 87 S.Ct. 1373, 18 L. Ed.2d 455 (1967), the reason why the inclusion of an incompetent person on a tribunal permits a back pay suit in this court, is stated to be that the tribunal's decision is "void." In *Henderson* we called it "void ab initio," which I suppose is even worse. It is as if the tribunal had never sat. See McClaughry v. Deming, 186 U.S. 49, 64, 22 S.Ct. 786, 46 L.Ed. 1049 (1902). That is a bothersome concept in the case of Selection Boards. They "recommend" lists of names, in the case of "Hump Boards" for retention, in the case of others, for promotion, retention, or "selection out." If the Board, in the eyes of the law, never was, it would seem the Secretary had no jurisdiction to promote or retain those to whom it gave favorable consideration, and perhaps they now owe the Government for overpayments of salary and fringe benefits. This is a result too horrible to contemplate. Our decision does not imitate its authorities in calling the Selection Board recommendation "void" and common sense certainly dictates that we should not do so. But if it is not "void," then we are not following our authorities but proceeding on a different theory, the nature of which is left unstated. I think it is nowadays considered good judgment generally to refrain from calling any act or decision "void" if other words will serve the purpose. Perhaps it suffices here to say the Secretary was arbitrary and capricious insofar as he took adverse action against anyone on the basis of a recommendation by an illegally constituted Board. If the purpose of the provision the Navy breached was to protect persons whom the Board might view with disfavor, that purpose would not require us to say or do anything adverse to the interests of persons not parties to this litigation, on whom the Board looked favorably.