603 F.2d 914
 195 U.S.App.D.C. 332
 Michael F. DILLEY, Captain, U.S. Army Reserve, et al., Appellants,
v.
Clifford L. ALEXANDER, Jr., Secretary of the Army, et al.
Raymond W. FONTAINE, Major, U.S. Army Reserve, et al., Appellants,
v.
Clifford L. ALEXANDER, Jr., Secretary of the Army, et al.
Milton D. O'QUINN, Appellant,
v.
Clifford L. ALEXANDER, Jr., Secretary of the Army.
Major Russell A. POWELL, Appellant,
v.
Clifford L. ALEXANDER, Jr., Secretary of the Army.
 Nos. 77-1789 to 77-1792.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Oct. 24, 1978.
Decided Feb. 26, 1979.
As Amended April 9, 1979.
Rehearing Denied July 26, 1979.
 
 Robert M. Wright, Baltimore, Md., a member of the bar of the Court of Appeals for the State of Maryland pro hac vice by special leave of Court, and Keith A. Rosenberg, Rockville, Md., for appellants.
 Louis R. Davis, Atty., Office of the Judge Advocate Gen., U. S. Army, Washington, D. C., a member of the bar of the Supreme Court of Louisiana pro hac vice by special leave of Court, with whom Earl J. Silbert, U. S. Atty., John A. Terry, Royce C. Lamberth, and Nathan Dodell, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.
 Also Charles H. Anderton, Jr., Asst. U. S. Atty., Washington, D. C., entered an appearance for appellee.
 Before WRIGHT, Chief Judge, and MacKINNON and ROBB, Circuit Judges.
 Opinion for the Court filed by MacKINNON, Circuit Judge.
 MacKINNON, Circuit Judge:
 
 
 1
 Section 266 of Title 10 of the U.S. Code provides that each board convened for the promotion of officers in the United States Army Reserve shall include an appropriate number of Reserve officers. Appellants are commissioned officers in the Army Reserve who were serving on active duty until early 1977. Between January and April of that year, they were involuntarily released from active duty because they were not selected (passed over) for temporary promotion to the next highest grade by two successive promotion selection boards convened in 1975 and 1976.[1] Upon notice of their pending release, appellants filed suit in federal district court claiming, Inter alia, that their separation from active duty would violate section 266 because the 1975 promotion selection boards that considered their applications had not included Reserve officers.[2] The district court, in an opinion and order dated July 27, 1977, granted the Army's motion for summary judgment on the ground that absent a showing of prejudice, it could not be said that the Army's treatment of appellants' applications had been arbitrary, capricious, or contrary to law. Dilley v. Alexander, 440 F.Supp. 375, 378-79 (D.D.C.1977). We reverse and hold that appellants are entitled to be reinstated to active duty and to be considered anew by two properly constituted promotion selection boards.
 
 
 2
 * The Army's current promotion procedures have their genesis in The Officer Personnel Act of 1947. Act of August 7, 1947, ch. 512, 61 Stat. 795. The 1947 Act abandoned the Army's seniority-based promotion system in favor of one whose cornerstones are promotion selection boards specifically designed by the statute.[3] This enactment was followed by the passage of The Armed Forces Reserve Act of 1952, Act of July 9, 1952, ch. 608, 66 Stat. 496, which substantially reorganized the reserve components of each branch of the military service. The Reserve Act, styled "the Reserve bill of rights" during congressional consideration of the bill,[4] was intended, among other things, "to correct existing defects in policies and practices relating to the Reserve and the individual members thereof." S.Rep.No.1795, 82d Cong., 2d Sess. 2 (1952). Prominent among the rights set forth in the Reserve Act was the provision originally enacted as section 254, now codified at 10 U.S.C. § 266 (1976).[5] It provides:
 
 
 3
 (a) Each board convened for the appointment, promotion, demotion, involuntary release from active duty, discharge, or retirement of Reserves shall include an appropriate number of Reserves, as prescribed by the Secretary concerned under standards and policies prescribed by the Secretary of Defense.[6]
 
 
 4
 In accordance with this provision and to guide the military departments in effecting it, the Secretary of Defense issued Department of Defense Instruction No. 1205.4, which provides:
 
 
 5
 A. All boards convened for the appointment, promotion, demotion, involuntary release from active duty, discharge, or retirement of members of the Reserve components shall be constituted as prescribed by the appropriate Secretary, and shall include appropriate numbers of members from the Reserve components.
 
 
 6
 B. The intent of the Congress in this Section (266) is clear, that a member of the reserve component who is the subject of any of the indicated board actions shall be assured a fair representation of reserve membership on the board. The Secretaries of the military departments will, with due regard to availability of qualified reservists, pertinent statutory provisions, the nature of the board action, and the categories, regular and reserve, which may be considered by the board, provide in the membership of the indicated boards, to the fullest practicable extent, a fair and adequate representation of members from the reserve components.
 
 
 7
 This directive, like the statute that prompted it, applies to boards convened for consideration of temporary promotions in the Army. The procedures governing conduct of those boards are set forth in Army Regulation 624-100, promulgated pursuant to 10 U.S.C. § 3442(c) (1976).[7] Under this regulation, whenever non-Regular officers are among those to be considered for promotion, the promotion board must, "where practicable, include at least one officer of the Reserve components." AR 624-100, § II, P 16(b)(5). Regular and Reserve officers under consideration are divided into two groups without reference to component. The first group, the "primary zone," consists of all officers with certain dates of rank specified by the Secretary making them the most senior. The other group, the "secondary zone," includes officers with similarly specified dates of rank making them the more junior. Id. § I, P 2(i)-(j). Before a particular promotion board is convened,[8] the Secretary issues letters of instruction indicating what percentage of officers may be chosen from each of the two zones and specifying what the overall number of officers to be recommended for promotion is to be. See id. § II, P 16(c). Within the parameters set by these quotas, the promotion boards make recommendations based on the "best qualified" method whereby officers receiving the highest of three possible grades are selected by the board for temporary promotion to the next highest grade. Consistent with the quotas set by the letters of instruction, the vast majority of selections come from the primary zone. The recommendations are then passed on to the Secretary for action. Army Regulation 635-100 provides that commissioned officers who twice fail to be selected for promotion under AR 624-100 are to be involuntarily released from active duty.[9]
 
 
 8
 It was in the foregoing context that appellants' applications for promotion to temporary grades came before the 1975 promotion selection boards. Some of appellants were candidates before the board considering promotions to the temporary grade of lieutenant colonel; the rest were under consideration by the board making recommendations for promotion to the temporary grade of major. Apparently as a consequence of inadvertent administrative error, neither of these "1975 Boards" included even a single Reserve officer among its membership. The promotion board for lieutenant colonel awarded 15% Of its quota of vacancies to officers in the secondary zone; the promotion board for major awarded 15% Of its available vacancies to secondary zone officers.[10] None of appellants, all of whom were in the primary zone, were recommended for promotion.
 
 
 9
 In the Fall of 1975, appellants and others similarly situated applied to the Army Board for Correction of Military Records ("Corrections Board") requesting that their records be adjusted to eliminate reference to their nonselection by the 1975 Boards. In addition to alleging various procedural and other defects in the promotion selection process,[11] appellants claimed that the lack of Reserve membership on the 1975 Boards meant that the boards were without jurisdiction to consider their applications. Following a hearing on the claims, the Corrections Board rendered an interim decision rejecting all claims except those based on section 266 and its administrative progeny. With respect to the absence of Reserve membership on the 1975 Boards, the Corrections Board observed:
 
 
 10
 (W)hile it appears that the Department may not have complied with the intent (of section 266) to have an appropriate number of Reserve Component members on the . . . 1975 promotion boards when considering Reserve officers, the written depositions of the selection board members indicate that an individual's component had little or no bearing in their consideration and selection of an officer for promotion. Further it appears from a review of the entire matter that any decision or other action by the Department to omit Reserve Officers from promotion selection boards was not done in an arbitrary and capricious manner or with malicious intent to harm or prejudice the applicants' promotion chances as Reservists. . . . (I)n viewing the situation in the most favorable light of the applicants, it is apparent the absence of Reservists from the . . . 1975 selection board may have deprived them of consideration in the manner intended; . . . although the applicants have not shown that they have been harmed because there was no Reserve officer on the board, the failure to have a Reserve officer as a member of the selection board raises some doubt as to whether the applicants were accorded proper consideration for promotion under the . . . 1975 promotion criterion.
 
 
 11
 App. at 143-44. On the basis of these observations, the Corrections Board recommended that the 1975 Boards be "reconstituted" with the proper membership and that these so-called "Relook Boards" reconsider all primary zone officers who had been considered by the defective 1975 Boards. The Corrections Board's recommendation was that these Relook Boards would "mirror" their flawed predecessors by considering candidates' records as those records appeared in 1975 and by operating under criteria employed by the 1975 Boards. Officers who had already been promoted by the improperly constituted boards would retain their new grades, but any officer recommended for promotion by the Relook Boards would also be elevated, regardless of how the 1975 Boards had acted. One crucial difference between the 1975 Boards and the Relook Boards, however, is that whereas the former considered All officers eligible for temporary promotion to the next highest grade, the latter was to consider only Primary zone officers. In consequence, there were 664 fewer vacancies available to the Relook Boards.[12]
 
 
 12
 In January 1976 the Secretary adopted the findings, conclusions, and recommendations of the Corrections Board and issued a directive to the Chief of Staff to convene the Relook Boards in accordance with those recommendations. App. at 121-22. Before this directive could be implemented, appellants were again considered for promotion to next highest temporary grade by the 1976 promotion selection boards. There is no contention that these "1976 Boards" were improperly constituted. The personnel records reviewed by the 1976 Boards, however, reflected appellants' nonselection for promotion by the 1975 Boards. Appellants were not recommended for promotion in 1976. Although this was the second board that had passed them over, appellants were retained on active duty pending the outcome of the Relook Boards' decisions. In the Fall of 1976, the Relook Boards informed the Corrections Board that, upon reconsideration, appellants had not been recommended for temporary promotions to the next highest grades. The Corrections Board thereafter issued findings and conclusions based on the Relook Boards' actions. In pertinent part, the Corrections Board concluded:
 
 
 13
 That the applicants' records having been reconstituted in the manner prescribed by the Secretary and having been reviewed by properly reconstituted . . . promotion boards under the primary zone of the . . . 1975 criteria, it is reasonable to presume that had they been considered by properly constituted boards, they would not have been selected for promotion at the time concerned under the "best qualified" method.
 
 
 14
 That the applicants' nonselections for temporary promotion to the next higher grade tend to support the evidence heretofore submitted (a) that an individual's component had little or no bearing in their consideration and selection for promotion, and (b) that any decision or other action by the Department to omit Reserve officers from promotion selection boards was not done in an arbitrary or capricious manner or with malicious intent to harm or prejudice the applicants' promotion chances as Reservists.
 
 
 15
 App. at 148-49. Following issuance of this decision, appellants were notified that their release from active duty would be forthcoming. This action ensued.
 
 II
 
 16
 We are fully mindful of the restricted role of the judiciary with respect to the internal affairs of the military departments. Recognizing that it is not the business of the courts to run the military establishments, courts have shown extreme reluctance to interfere with the military's lawful exercise of its discretion over internal management matters. See, e. g., Orloff v. Willoughby, 345 U.S. 83, 93, 73 S.Ct. 534, 97 L.Ed. 842 (1953); Reaves v. Ainsworth, 219 U.S. 296, 306, 31 S.Ct. 230, 55 L.Ed. 225 (1911); Luftig v. McNamara, 126 U.S.App.D.C. 4, 5-6, 373 F.2d 664, 665-66 (per curiam), Cert. denied, 387 U.S. 945, 87 S.Ct. 2078, 18 L.Ed.2d 1332 (1967). This deference is at its highest when the military, pursuant to its own regulations, effects personnel changes through the promotion or discharge process. See Pauls v. Secretary of the Air Force, 457 F.2d 294, 297 (1st Cir. 1972); Bluth v. Laird, 435 F.2d 1065, 1070-71 (4th Cir. 1970); Muldonian v. United States, 432 F.2d 443, 447, 193 Ct.Cl. 99 (1970); Payson v. Franke, 108 U.S.App.D.C. 368, 371, 282 F.2d 851, 854 (1960), Cert. denied, 365 U.S. 815, 81 S.Ct. 646, 5 L.Ed.2d 694 (1961). The logic of these cases is that, given the special circumstances in which the military must operate, the courts are ill-equipped to resolve controversies arising from the use of discretionary powers specifically designed to provide military authorities with the freedom and flexibility needed to establish and maintain a well-trained and well-disciplined armed force. Cf. Parker v. Levy, 417 U.S. 733, 758, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974).
 
 
 17
 This logic is wholly inappropriate, however, when a case presents an issue that is amenable to judicial resolution. Specifically, courts have shown no hesitation to review cases in which a violation of the Constitution, statutes, or regulations is alleged. See, e. g., Harmon v. Brucker, 355 U.S. 579, 582, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958); Huff v. Secretary of the Navy,188 U.S.App.D.C. 26, 30-33, 575 F.2d 907, 911-14 (1978); Mindes v. Seaman,453 F.2d 197, 200 (5th Cir. 1971). It is a basic tenet of our legal system that a government agency is not at liberty to ignore its own laws and that agency action in contravention of applicable statutes and regulations is unlawful. See Vitarelli v. Seaton, 359 U.S. 535, 539, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); Service v. Dulles, 354 U.S. 363, 379, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957). The military departments enjoy no immunity from this proscription. See Harmon v. Brucker, supra; Geiger v. Brown, 136 U.S.App.D.C. 132, 135-37, 419 F.2d 714, 717-19 (1969); Roberts v. Vance, 119 U.S.App.D.C. 367, 371, 343 F.2d 236, 240 (1964). It is the duty of the federal courts to inquire whether an action of a military agency conforms to the law, or is instead arbitrary, capricious, or contrary to the statutes and regulations governing that agency. See, e. g., VanderMolen v. Stetson, 187 U.S.App.D.C. 183, 190, 571 F.2d 617, 624 (1977); Powell v. Zuckert, 125 U.S.App.D.C. 55, 61-62, 366 F.2d 634, 640-41 (1966); Dunmar v. Ailes, 121 U.S.App.D.C. 45, 47, 348 F.2d 51, 53 (1965). The logic of these cases derives from the self-evident proposition that the Government must obey its own laws.
 
 
 18
 It is apparent that a statute and the regulations adopted pursuant to it were violated in this case. Section 266's mandate is not complex. It simply requires that each promotion board considering Reserve officers Shall include an appropriate number of Reserve officers. DOD Instruction No. 1205.4 and AR 624-100 restate that requirement.[13] The 1975 Boards considered Reserve officers for promotion, but did not include a Reserve officer among its membership. Those boards were, therefore, illegally composed.
 
 
 19
 The Army does not dispute the violation. Instead, it contends that a claim for relief premised on a defect in the promotion selection process cannot prevail without a showing that absent the defect the injured party would have been promoted and been entitled to remain on active duty. The Army contends that appellants' reconsideration and nonselection by the properly constituted Relook Boards conclusively demonstrate that the defect in the composition of the 1975 Boards did not result in any Prejudice to appellants. However, the Prejudice which the statute guaranteed against, insofar as reserve officers were concerned, was consideration by a promotion board devoid of reserve officers. There is no question that such prejudice existed in the composition of the selection board. Despite this, the army places principal reliance on Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The Reserve officers reply that section 266 is a jurisdictional predicate to decisionmaking by promotion selection boards that consider Reserve candidates. They suggest that the absence of Reserve membership on the 1975 Boards deprived those boards of the power to act, and, in consequence, rendered the decisions of the boards void Ab initio. Appellants reason that the Relook Boards could not repair the jurisdictional flaw because it is impossible to validate retroactively an action that was a nullity from the outset. Principal reliance is placed on McClaughry v. Deming, 186 U.S. 49, 22 S.Ct. 786, 46 L.Ed. 1049 (1902). We believe both these approaches misconceive the import of section 266 on the promotion selection process, and that consequently, neither Mt. Healthy nor McClaughry provide useful guidance in resolving the issue before us.
 
 
 20
 McClaughry was a habeas proceeding involving an officer of the Army "volunteers," a forerunner of the present-day Reserves, who had been convicted by a court martial composed solely of Regular officers. The petitioner challenged his conviction on the ground that Article 77 of the Articles of War barred the use of Regular officers on court martials convened to try non-Regular officers. The Supreme Court affirmed the lower court's grant of habeas. Quoting from its earlier decision in Runkle v. United States, 122 U.S. 543, 555-56, 7 S.Ct. 1141, 30 L.Ed. 1167 (1887), the Supreme Court reasoned:
 
 
 21
 "A court-martial organized under the laws of the United States is a court of special and limited jurisdiction. It is called into existence for a special purpose and to perform a particular duty. . . . To give effect to its sentences it must appear affirmatively and unequivocally that the court was legally constituted; that it had jurisdiction; that all the statutory regulations governing its proceedings had been complied with and that its sentence was conformable to law."
 
 
 22
 186 U.S. at 62-63, 22 S.Ct. at 791. Because the court martial that had tried petitioner had been unlawfully constituted, the Court concluded that the tribunal was "without jurisdiction" to hear the case. Id. at 69, 7 S.Ct. 1141. Accord, United States v. Brown, 206 U.S. 240, 244, 27 S.Ct. 620, 51 L.Ed. 1046 (1907).
 
 
 23
 We agree with the Army that McClaughry's jurisdictionally-based analysis is inapposite here. In contrast to the quasi-judicial, penal proceeding involved in that case, we are concerned here with a nonpenal administrative proceeding. The promotion boards themselves have no power to promote candidates directly; they only have the power to recommend officers for promotion.[14] Moreover, to characterize the actions of a defectively composed promotion board as "void Ab initio " is to hold that the tribunal never existed. This fiction is not only unnecessary to a decision in this case, but it also would create an untenable situation for the Army with regard to those officers who actually were promoted by the 1975 Boards. See Ricker v. United States, 396 F.2d 454, 458, 184 Ct.Cl. 402 (1968) (Nichols, J., concurring); Henderson v. United States, 175 Ct.Cl. 690, 698 (1966), Cert. denied, 386 U.S. 1016, 87 S.Ct. 1373, 18 L.Ed.2d 455 (1967).[15]
 
 
 24
 At the same time, however, we believe that the Army misapprehends its obligations under section 266, and this confusion is evident in the Army's use of Mt. Healthy. That case, invoked by the Army in support of its "but for" test of prejudice, involved a suit by a nontenured teacher whose contract had not be renewed by the school board. Although there was no requirement that the school board articulate reasons for its decision, the board in fact had gratuitously cited several incidents of allegedly unprofessional behavior on the teacher's part, one of which consisted of making some remarks to a radio station about the school's dress code. Noting that these remarks were constitutionally protected speech, the district court found that they had played a substantial role in the school board's decision and held that as a result, the teacher was entitled to reinstatement. This was so, the district court said, even though the school board had cause to dismiss the teacher independent of the radio incident. The court of appeals affirmed, but the Supreme Court unanimously reversed. The Supreme Court agreed that the radio comments were constitutionally protected and that the teacher would be entitled to reinstatement upon a showing that he was dismissed as a result of them. The Court held, however, that this latter showing required more than proof that the protected speech played a part in the school board's action; rather, the school board was entitled to show with a preponderance of the evidence that it would have acted as it had regardless of the radio remarks. 429 U.S. at 287, 97 S.Ct. 568. Otherwise, the Court reasoned, a candidate before the school board, by his own conduct, would be able to prevent an assessment of his performance based on the overall record. Id. at 286, 97 S.Ct. 568.
 
 
 25
 The Mt. Healthy Court was concerned solely with whether the school board had acted beyond the scope of its discretion. The school board had no power to act on constitutionally impermissible considerations, and the Supreme Court's "but for" test, if it may be deemed such, was fashioned only to resolve the factual issue of whether the school board had so acted. There was no procedural violation, statutory or otherwise, leading to the school board's action. Moreover, the Court's test was prompted by a concern that the allegedly injured party could shroud the issue and insulate himself merely by exercising his first amendment rights. Here, appellants do not attack the substantive basis for the Army's decision. Their challenge is instead based on a violation of conceded procedural rights contained in the statute governing the military's promotion system. Appellants had no opportunity, apart from the administrative appeals process postdating the injury, to affect their receipt or denial of those rights. Most important, however, this case simply does not involve the permissible exercise of discretion, and herein lies the principal error in the Army's analysis.
 
 
 26
 Contrary to the view that the Army has intimated almost from the outset of this controversy, the language of section 266 and the regulations it engendered is mandatory, not permissive.[16] The Reserve Act's legislative history reveals a congressional intent to establish selection boards that would protect Reserve officers against whatever generic bias may exist against them in selection boards composed entirely of regular Army officers.[17] The history also makes clear that Congress decided to attempt to remedy this bias itself by imposing nondiscretionary institutional safeguards designed to ensure Reserve participation in decisions affecting Reserve members.[18] The Army is not free to disregard this legislative decision and to opt instead to determine on an Ad hoc basis whether or not the bias exists. Yet that is precisely what the Army did in this case.
 
 
 27
 The Army's attitude is apparent, for example, in the initial decision of the Corrections Board recounted in Part I Supra. The major portion of the Correction Board's consideration of the section 266 issue is devoted to findings that the appellants' Reserve status had "no bearing" on the 1975 Boards' actions, that the omission of Reserve officers from the 1975 Boards "was not done in an arbitrary and capricious manner or with malicious intent," and that appellants "have not shown that they have been harmed" by the omission. App. at 143-44. But these findings, while laudable perhaps, are either irrelevant or incorrect as a matter of law. Although a desire to eliminate prejudice obviously occasioned enactment of the statute, section 266 itself does not outlaw anti-Reserve bias.[19] It prescribes a procedural entitlement that no subsequent factual finding by the Army can diminish. The Corrections Board's decision to recommend the Relook Boards similarly amplifies the Army's attitude. The purpose of the Relook Boards was not to consider appellants for promotion to the next higher grade, but rather to determine whether the 1975 Boards have been biased. See Army's Br. at 57. This ends-justifying-the-means procedure is inconsistent with section 266's straightforward mandate and is not authorized by any other provision of the statute.[20] Endorsement of it here would also insulate the Army from meaningful judicial scrutiny, for it would permit the Army to violate its governing statutes at will and then determine for itself whether the violation made any difference. As we have said, Congress made a decision over a quarter of a century ago that a promotion selection board considering Reserve candidates was inherently defective if it lacked Reserve representation; the Army was not at liberty to review and reverse that congressional decision on its own. Once it discovered the faulty composition of the 1975 Boards, it was obliged under section 266, DOD Instruction No. 1205.4, and AR 624-100 to reconvene those boards with properly constituted memberships.
 
 
 28
 This case would be considerably different had the Relook Boards been normal promotion selection boards merely masquerading under a new label. Despite the Relook Boards' misguided charter, if the Army had successfully placed the appellants in the same position as they were in before the 1975 Boards convened, then the procedural defect would have been repaired and appellants would have no cause to complain. The Army did not completely " reconstitute" that setting, however, and we regard its failure to do so in two important respects as critical to our holding in this case. First, between the time of the initial Corrections Board recommendation and the implementation of that recommendation through establishment of the Relook Boards, appellants were considered for promotion by the 1976 Boards. These 1976 Boards, which did not select appellants for promotion, had before them records that reflected appellants' nonselection in 1975 even though appellants had never been lawfully passed over. Thus establishment of the Relook Boards had no effect on appellants' status before the 1976 Boards,[21] though it should have if appellants were to be placed in the same position they were in before 1975. Second, the Relook Boards had substantially fewer promotion vacancies to fill than the 1975 Boards. The Relook Boards were to reconsider only primary zone candidates who had been reviewed by the 1975 Boards. Although primary zone candidates receive some preferential treatment in the promotion process owing to the Secretary's limitations on the number of secondary zone officers who can be promoted, candidates from both zones compete for the same slots. Hence the selection of a candidate from the secondary zone effectively displaces a candidate from the primary zone. By limiting the Relook Boards' duty to reconsider the primary zone alone, the Corrections Board eliminated a total of 664 promotion vacancies for which appellants could have otherwise competed. This reduction in the number of available slots materially affected appellants' prospects for promotion before the Relook Boards and deprived them of substantial rights guaranteed them by the statute.
 
 III
 
 29
 In sum, then, we hold that the Corrections Board's treatment of appellants' claims was contrary to law and that the Secretary's actions thereon were arbitrary and capricious. Because the Army's gross violation of the statute and regulations governing its promotion selection procedures adversely affected appellants' consideration for promotion in 1975 and 1976, appellants are entitled to be reinstated to active duty and to be considered again by two promotion selection boards constituted in accordance with applicable statutes and regulations.[22]
 
 
 30
 Judgment accordingly.
 
 ORDER
 
 31
 PER CURIAM.
 
 
 32
 Upon consideration of appellees' petition for rehearing, and of the response filed thereto, it is
 
 
 33
 ORDERED, that appellees' aforesaid petition for rehearing is denied for the reasons set forth in the opinion for the division of the Court filed herein this date.
 
 
 34
 Opinion PER CURIAM.
 
 ON REHEARING
 PER CURIAM:
 
 35
 In its original brief to this Court appellees acknowledged that the promotion selection boards convened in 1975 to consider appellants for promotion to the temporary grades of lieutenant colonel and major were constituted in violation of the congressional directive in 10 U.S.C. § 266 (1976) that promotion selection boards considering Reserve candidates include an appropriate number of Reserve officers. Appellees argued, however, that the Army's "relook boards," which were Solely designed to determine whether appellants had been prejudiced by the Army's direct violation of section 266, had rendered the Army's violation of the statute meaningless. The panel of this court that considered that contention unanimously rejected it. Dilley v. Alexander, 195 U.S.App.D.C. ---, 603 F.2d 914 (1979).
 
 
 36
 In their first petition for rehearing to this court appellees abandoned their longstanding theory of the "relook boards," and instead argued that the panel's decision contained two factual errors. Consideration of that argument revealed that the alleged errors in fact did not exist, and that the panel's holding that the "relook boards" had not placed appellants in the position they were in before the Army's unjustified violation of section 266 was supported not only by the record and common sense, but also by the admissions of the Army's counsel at oral argument.
 
 
 37
 In this their second petition for rehearing appellees advance still another basis on which they urge this court to endorse the Army's clear violation of the congressional intent embodied in section 266. That basis is an ostensible conflict between the panel's original decision and the Court of Claims' recent decision in Doyle v. United States, 599 F.2d 984 (Ct.Cl.1979). We write here only to express our conviction that this supposed conflict simply does not exist.
 
 
 38
 In Doyle, as in this case, the Army convened promotion selection boards not constituted in accordance with section 266. In Doyle, as in this case, the Army thereupon instituted "relook" boards, once again Not for the purpose of ensuring the Doyle plaintiffs of the procedural rights guaranteed them by statute but only for the self-serving purpose of showing that the statutory guarantee was meaningless as applied to those plaintiffs. The Doyle court, like this court, categorically rejected the Army's claim that section 266 could be treated in this fashion. Compare Dilley v. Alexander, supra, 195 U.S.App.D.C. at --- - ---, 603 F.2d at 922-924 with Doyle v. United States, supra, 599 F.2d at 995-997. On the legal issue of the Army's responsibilities under section 266, Dilley and Doyle stand as one. Indeed, the latter decision cited the former with approval. Doyle v. United States, supra, 599 F.2d at 996-997. The Doyle court said, however, that owing to Factual distinctions between the two cases, its result was "slightly different" from the one reached by this court in Dilley. See id., 599 F.2d at 1001 n.15.
 
 
 39
 We recognized in our decision that "(d)espite the Relook Boards' misguided charter, if the Army had successfully placed the appellants in the same position as they were in before (the violation of section 266 occurred), then the procedural defect would have been repaired and appellants would have no cause to complain." Dilley v. Alexander, supra, 195 U.S.App.D.C. at ---, 603 F.2d at 924. We held that the Army had not done so because the second, lawfully constituted, promotion boards that had considered appellants for promotion had before them records which reflected their nonselection by the illegally composed boards, and because the relook boards had far fewer promotion slots available to them. The Doyle court agreed with our view that had the relook boards repaired the section 266 violation, the nonselected officers would have no basis for complaint. The difference in the result in Doyle was that the court of claims found that the Army had indeed repaired the violation. Because both of the boards in Doyle had been defective, and the Army had constituted two successive relook boards, the first of the problems in Dilley was not present in Doyle. And because the Doyle plaintiffs had not complained at the administrative level of the diminished number of available promotion slots, the Doyle court held that they could not do so now.
 
 
 40
 The appellees' second petition for rehearing leaps on this second point to warn of a split between the Dilley decision and Doyle. We note first that even if appellees' point is accepted, it erases only one of the two bases on which Dilley rested. Second and more important, the Army never raised this contention either in its original brief or in its first petition for rehearing. Appellants consistently alleged exhaustion of administrative remedies and appellees never pleaded or argued otherwise. The Supreme Court has held that if the agency fails to challenge the sufficiency of the allegations of exhaustion, it is not required. Matthews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). Moreover, this court has in the past declined to consider arguments raised for the first time on appeal. See, e. g., Brewster v. Commissioner of Internal Revenue, No. 77-2010 (D.C. Cir. decided June 1, 1979) slip op. at 4 n.2; Jordan v. United States Department of Justice, 192 U.S.App.D.C. 144, 591 F.2d 753 (1978) (en banc); Miller v. Avirom, 127 U.S.App.D.C. 367, 384 F.2d 319 (1967). We see no reason to consider an argument raised for the first time in a second petition for rehearing.
 
 
 41
 Appellees' alleged "conflict," then, does not exist. We accordingly decline to rehear this case. It is
 
 
 42
 So ordered.
 
 
 
 [1]
 A temporary promotion refers to appointment to a grade in the Army of the United States (AUS). These appointments are made without specification of an officer's component, regular or reserve, 10 U.S.C. § 3441 (1976), and without vacating the officer's permanent grade in either the Regular Army of the United States (RA) or the United States Army Reserve (USAR), 10 U.S.C. § 3442 (1976)
 
 
 [2]
 Appellants initiated this suit after they were notified their release would be forthcoming, but before the releases actually took place. On January 31, 1977, the district court denied a motion for a preliminary injunction preventing the scheduled release, Dilley v. Alexander, 440 F.Supp. 375, 377 (D.D.C.1977), and appellants were thereafter released from active service
 
 
 [3]
 The 1947 Act did not establish statutory boards for temporary promotions in the Army of the United States (AUS), but instead left the matter to be settled by regulations promulgated by the Secretary of the Army. See 10 U.S.C. § 3442(c) (1976). By means of Army regulation AR 624-100, the Secretary created promotion selection boards to consider temporary promotions. These boards mimic the structure and procedures used in permanent promotions
 
 
 [4]
 98 Cong.Rec. 9017 (1952) (remarks of Rep. Van Zandt)
 
 
 [5]
 Congressional recodification of statutory provisions relating to the military service, See Act of August 10, 1956, ch. 1041, 70A Stat. 1, resulted in slight and immaterial adjustments in the text of § 266, See S.Rep.No.2484, 84th Cong., 2d Sess. 38 (1956); H.R.Rep.No.907, 84th Cong., 1st Sess. 27 (1955)
 
 
 [6]
 Congress declined to set a specific number or formula for Reserve representation on these boards. The House Committee recommended and the House adopted language imposing the "appropriate number" requirement, See 97 Cong.Rec. 13153 (1951), with the House Report stating that "the proportion of Reserve officers on the board should be roughly equal to the proportion of personnel being considered who are Reserves," H.R.Rep.No.1066, 82d Cong., 2d Sess. 49 (1951). The Senate Committee recommended and the Senate adopted the same language, with the additional clause requiring the Secretary of Defense to promulgate regulations regarding the "appropriate number." See 98 Cong.Rec. 8298-99 (1952). The Senate Report repeated the House's statement about its understanding of what "appropriate" meant. S.Rep.No.1795, 82d Cong. 2d Sess. 35-36 (1952). In conference, the House receded to the Senate version, explaining that it provided "more flexibility by allowing the Reserve representation on such boards to be established by regulation." H.R.Rep.No.2445, 82d Cong., 2d Sess. (1952) (Conference Report), Reprinted in 98 Cong.Rec. 9005, 9015 (1952). This flexibility, however, concerned only the degree and manner of Reserve representation. Thus, no matter how many Reserve officers ought be on the board, it is clear that Some Reserve representation is required
 
 
 [7]
 The statute provides:
 (c) Subject to (authorized strength limitations), a regular commissioned officer, or a reserve commissioned officer who is serving on active duty, may be appointed in a temporary grade that is equal to or higher than his regular or reserve grade, without vacating any other grade held by him. Under regulations to be prescribed by the Secretary, appointments made under this subsection shall be made on a fair and equitable basis. Selections shall be based upon ability and efficiency with regard being given to seniority and age.
 10 U.S.C. § 3442(c) (1976); See note 3 Supra.
 
 
 [8]
 Although different boards are convened for the consideration of promotion to different ranks, these procedures govern the operations of all boards recommending temporary promotions
 
 
 [9]
 AR 635-100 derives from 10 U.S.C. § 681(a), which permits the Secretary to "release a Reserve under his jurisdiction from active duty." There is some dispute between the parties about whether Army regulations in effect at the time, particularly AR 635-100, permitted the release of appellants without an initial finding that they were "not fully qualified." The district court did not address this issue, and we have no occasion to resolve the dispute on appeal. See note 11 Infra
 
 
 [10]
 All of the secondary zone candidates selected for promotion to the temporary grade of lieutenant colonel were Regular officers; 84% Of the secondary zone candidates selected for promotion to the temporary grade of major were Regular officers. Regardless of the justification for such recommendations the results are precisely what reserve officers complain of
 
 
 [11]
 Appellants argued that the percentage of selections from the secondary zone made by the 1975 Boards had been unlawful and that the 1975 Boards had failed, in violation of controlling regulations, to make factual findings on whether appellants were "fully qualified" for promotion. These arguments, suitably refashioned, together with a novel equal protection claim based on the Army's settlement of a similar case in the Court of Claims, were restated to the district court and are raised again on this appeal. Because we hold that the appellants' releases were illegal owing to the Army's violation of § 266, we express no opinion on these contentions
 
 
 [12]
 The Relook Board considering candidates for lieutenant colonel had 266 fewer promotion vacancies available to it than the 1975 Board had. The Relook Board considering candidates for major had 398 fewer vacancies. App. at 153
 
 
 [13]
 As we noted in Part I, Supra, section II, paragraph 16 of AR 624-100 states that a Reserve officer shall be included "where practicable." The Army construes this to mean that Reserve officers shall be included when "qualified and available." App. at 143. Although the Army apparently argued to the Corrections Board that there were no "qualified and available" Reserve officers for the 1975 Boards, App. at 143-44, it does not raise that argument here
 
 
 [14]
 Section 515 of the Officer Personnel Act of 1947, as amended, provides in part:
 Temporary appointments of commissioned officers in the reserve components of the Army shall be made by the President alone in grades below lieutenant colonel and by the President by and with the advice and consent of the Senate, in grades above major.
 10 U.S.C. § 3447(b) (1976).
 
 
 [15]
 Appellants suggest that both Henderson and Ricker support their jurisdictionally-based analysis. Henderson and Ricker involved personnel actions by military boards alleged to have been improperly composed. In each, the Court of Claims concluded that the defect in composition deprived the plaintiffs of "substantial rights" to which they were entitled. The exact path traversed by the Henderson and Ricker courts to reach this conclusion is unclear. Though expressly disavowing reliance on the court martial analogue, 175 Ct.Cl. at 698, the Henderson court called the proceedings "void ab initio." Id. at 701. While avoiding use of the word "jurisdiction," the Ricker court relied on one of McClaughry's decisional offspring. 396 F.2d at 457. We believe Henderson and Ricker to be basically consistent with our analysis, but insofar as they turn on considerations at variance with our reasoning, we do not follow them
 
 
 [16]
 See note 6 Supra. Closer to target but still off the mark are two other cases to which the Army refers, Knehans v. Alexander, 184 U.S.App.D.C. 402, 566 F.2d 312 (1977), Cert. denied, 435 U.S. 995, 98 S.Ct. 1646, 56 L.Ed.2d 83 (1978), and Colm v. Kissinger, 406 F.Supp. 1250 (D.D.C.1975), Vacated and remanded sub nom. Colm v. Vance, 186 U.S.App.D.C. 132, 567 F.2d 1125 (1977). In Knehans, the appellant had been discharged from the Army after having been twice passed over for promotion by statutory promotion selection boards. He argued that this discharge was unlawful because certain efficiency reports had been omitted from his file. In rejecting this argument, this court made no mention of a "but for" requirement, but instead observed that "nothing conditions the validity of Selection Board proceedings upon the review of a perfectly compiled file" 184 U.S.App.D.C. at 423, 566 F.2d at 315. The court noted, moreover, that appellant had evidently failed to exhaust his administrative remedies. Id.. Here, there is no claim of non-exhaustion and there is an affirmative statutory mandate requiring the presence of Reserve officers on promotion selection boards
 In Colm, two foreign service officers had been separated from the Foreign Service by reason of their nonselection for promotion to the next highest grade. They challenged the separation on the ground that, in violation of their rights to due process, they had not received a hearing prior to their separation. The district court, employing the two-prong test of Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), first held that the officers did not possess a property interest in their positions. 406 F.Supp. at 1256. It went on to note in dicta that even if the officers had a property interest, Roth required a balancing of that interest against the competing governmental interest to determine what kinds of safeguards might be afforded. Id. In this context, the court raised the possibility of reconstituting the selection boards, but quickly rejected it on the ground that the task would be too difficult. Id. The court thereupon granted the Army's motion for summary judgment. This court, though endorsing the district court's Roth analysis (without mention of "relook" possibility), vacated the judgment and remanded for reconsideration in light of a statute that had not been brought to the district court's attention. 186 U.S.App.D.C. at 134, 567 F.2d at 1127. The dicta of a vacated district court judgment is not, of course, binding on this court, but it is worth noting that Colm is not necessarily inconsistent with our analysis here. Had Colm involved a violation of the statute governing separation proceedings, the constitutional issue would never have been reached. The district judge's reference to the "relook" possibility, moreover, contemplated a precise recreation of the conditions existing five years before. The Relook Boards in this case failed to reconstruct completely the conditions antedating the 1975 Board's deliberations.
 
 
 [17]
 See, e. g., 98 Cong.Rec. 8303 (1952) (remarks of Sen. Long); 97 Cong.Rec. 13160 (1951) (remarks of Rep. Sasscer); 97 Cong.Rec. 13159-60 (1951) (remarks of Rep. Van Zandt); 97 Cong.Rec. 13158 (1951) (remarks of Rep. Brooks)
 
 
 [18]
 For example, one House sponsor of the bill, in explaining why certain safeguards were included, observed that Congress in the past had given "wide latitude to military authorities in administering the law, with the result that the discretion used was not always in the best interest of Reserve personnel." 97 Cong.Rec. 13159 (remarks of Rep. Van Zandt)
 
 
 [19]
 There are other provisions in the Code directly prohibiting such bias. For example, section 250 of the Reserve Act prohibits discrimination between Regular and Reserves in the administration of laws applying to both. 10 U.S.C. § 277 (1976)
 
 
 [20]
 We agree with the Army that it is the Corrections Board's decisions, and the Secretary's actions thereon, that are the subject of our review. See Knehans v. Alexander, 184 U.S.App.D.C. 420, 423, 566 F.2d 312, 315 (1977), Cert. denied, 435 U.S. 995, 98 S.Ct. 1646, 56 L.Ed.2d 83 (1978); Horn v. Schlesinger, 514 F.2d 549, 553 (8th Cir. 1975). The Corrections Board's authority derives from 10 U.S.C. § 1552(a) (1976), which provides:
 The Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice. . . . Except when procured by fraud, a correction under this section is final and conclusive on all officers of the United States.
 Although this provision gives the Corrections Board broad discretion to remedy errors in military records, See Knehans v. Alexander, supra, 184 U.S.App.D.C. at 423, 566 F.2d at 315; Hodges v. Callaway, 499 F.2d 417, 422 (5th Cir. 1974), it does not entitle the board to violate express statutory directives in doing so, See Unterberg v. United States, 412 F.2d 1341, 1346, 188 Ct.Cl. 994 (1969); Ashe v. McNamara, 355 F.2d 277, 281 (1st Cir. 1965).
 
 
 [21]
 This error was not insignificant, for the promotion prospects of an officer already once "passed over" by a selection board are narrow. It is undisputed that only 11.6% Of these "deferred" officers were selected for promotion by the 1976 promotion board for major. The comparable figure for lieutenant colonel was 19.4%. See App. at 103
 
 
 [22]
 If there are any statutory obstructions, in whole or in part, to this relief they have not been called to our attention. If they exist as to the appellants, or any one of them, the Army by motion may direct the court's attention to these statutes