**Barry W. WOLFE, Appellant,**

v.

**John O. MARSH, Jr., Secretary of the Army, et al.**

No. 86–5703.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 1, 1987.

Decided Dec. 18, 1987.

the complaint. Wolfe's complaint, alleging various procedural defects in the handling of his discharge from the Army, requested the District Court to reverse administrative action denying his request to have his discharge upgraded. The District Court found, under the arbitrary, capricious or contrary to law standard of review, that there was no basis for affording Wolfe the relief he sought. We affirm.

## I.

After slightly over eight years of service in the United States Army, on July 24, 1979, Wolfe was administratively discharged in lieu of court-martial under other than honorable conditions pursuant to Army Regulation ("AR") 635–200, chapter 10 ("chapter 10 discharge"). The court-martial charges which precipitated the chapter 10 discharge were predicated upon a finding by the Army Criminal Investigation Command that Wolfe had participated in several drug transactions while assigned to Fort Belvoir, Virginia, as an army cook. To prepare for the pending court-martial proceedings, Wolfe obtained the assistance of Captain William P. Boyer, a certified military lawyer. Captain Boyer unsuccessfully attempted to obtain immunity for Wolfe, in return for information Wolfe might provide regarding other drug transactions. After this unsuccessful attempt, and faced with the possibility of punitive sanctions and a bad conduct discharge resulting from the court-martial charges, Wolfe sought a chapter 10 discharge.

In July 1979, to initiate chapter 10 discharge procedures, Wolfe submitted a form reciting the grounds for his request and his appreciation of the consequences of his action in requesting the discharge. In summary, the form stated: his request was voluntary; he was guilty of the charges against him or of lesser included offenses authorizing the imposition of a Bad Conduct or Dishonorable Discharge; he did not desire rehabilitation, for he had no desire to perform further military service; he had consulted with an attorney who had ad-

Donald G. Smith, for appellant.

Bradley L. Kelley, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Royce C. Lamberth and Michael J. Ryan, Asst. U.S. Attys. were on the brief, for appellees. R. Craig Lawrence, Asst. U.S. Atty. also entered an appearance for appellees.

Before BUCKLEY and WILLIAMS, Circuit Judges, and AUBREY E. ROBINSON, Jr.,* Chief Judge, United States District Court for the District of Columbia.

Opinion for the Court filed by Chief Judge AUBREY E. ROBINSON, Jr.

AUBREY E. ROBINSON, Jr., Chief Judge:

In this case, Appellant, Barry W. Wolfe ("Wolfe") appeals from the District Court's grant of summary judgment in favor of Appellees, John O. Marsh, Jr., Secretary of the Department of the Army, and the United States of America ("the Army"), denial of Wolfe's cross-motion, and dismissal of

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

vised him of his rights; and he understood the adverse consequences of his request, including that if it was accepted he could be discharged under other than honorable conditions.[1]

Shortly thereafter, still in July 1979, Wolfe's request was approved by the officer exercising general court-martial jurisdiction for the base at which Wolfe was stationed, Major General Kelly, the appropriate Army official to finally approve the chapter 10 discharge request. Predictably, he was discharged under other than honorable conditions. Wolfe, however, soon had second thoughts, and he petitioned the Army Discharge Review Board requesting it to upgrade his discharge to honorable. The Review Board denied Wolfe's request, rejecting his attack on the underlying court-martial charges and finding that the procedural defects complained of did not prejudice Wolfe. The Review Board also considered, and rejected as grounds for relief, mitigating factors surrounding his request indicating that Wolfe was suffering from personal problems at the time he submitted his request and that he was erroneously advised, by a congressional aide, that his discharge could routinely be upgraded.

Wolfe then sought relief from the Army Board for the Correction of Military Records ("Correction Board"). The Correction Board also denied his request to upgrade his discharge to honorable, finding that, under all the circumstances of the case, Wolfe's discharge was appropriate

and "was accomplished in compliance with applicable regulations with no indication of procedural errors which would tend to significantly jeopardize [Wolfe's] rights." Findings of the Army Board for the Correction of Military Records at 5, *reprinted in* Appellant's Appendix 24, 28.

Following the Correction Board's disposition, Wolfe sought judicial review. The District Court granted summary judgment in favor of the Army and dismissed Wolfe's complaint, holding that the Correction Board's decision that the procedural irregularities were not prejudicial and thus that the discharge was proper was not arbitrary, capricious or contrary to law.

 Throughout the administrative and judicial proceedings Wolfe has pointed to several procedural irregularities in the handling of his discharge request as entitling him to relief. Generally they relate to missing documentation in his case file, the conducting of his physical examination after his discharge request was approved rather than before, and the absence of proof that his discharge request was formally reviewed by intermediate commanding officers prior to final approval.[2] On appeal the focus has been on the requirement that intermediate commanding officers review and make recommendations regarding the discharge request prior to final approval. AR 635–200, ¶ 10–3. Because this is the only arguable basis for relief in this Court, we limit our discussion accordingly.[3]

---

1. Provision four (4) of the form submitted by Wolfe states:

 I understand that, if my request for discharge is accepted, I may be discharged under other than honorable conditions and furnished an Under Other Than Honorable onditions [sic] Discharge Certificate. I have been advised and understand the possible effects of an Under Other Than Honorable Conditions Discharge and that, as a result of the issuance of such a discharge, I will be deprived of many or all Army benefits, that I may be ineligible for many or all benefits administered by the Veterans Administration, and that I may be deprived of my rights and benefits as a veteran under both Federal and State law. I also understand that I may expect to encounter substantial prejudice in civilian life because of an Under Other Than Honorable Conditions Discharge.

 Request for Discharge for the Good of the Service, *reprinted in* Appellant's Appendix 52, 54.

2. The Army Discharge Review Board found that Wolfe's unit commander and intermediate commander (referred to collectively as intermediate commanders in this opinion) did not take action on Wolfe's request prior to final approval. The Correction Board did not make a specific finding on this issue. For the purposes of this appeal, we assume that the Correction Board adopted this finding.

3. Indeed, to the extent Wolfe still claims that the missing documents and the timing of his physical examination provide independent bases for relief, apart from their possible effect on the reviewing function of the intermediate commanders, these claims are plainly without merit

## II.

The regulation at issue clearly contemplates input from intermediate commanders prior to final approval by the commander exercising general court-martial jurisdiction. It provides:

> The request for discharge will be forwarded through channels to the officer who has general court-martial jurisdiction over the member concerned. Commanders through whom the request for discharge is forwarded will recommend either approval or disapproval with the reasons for the recommendation; if approval is recommended, the type of discharge to be issued also will be recommended.

AR 635–200, ¶ 10–3(b).

After stating the general rule that an under other than honorable discharge is normally appropriate for a member who is discharged pursuant to chapter 10, the regulations provide that an honorable or general discharge may instead be ordered if the member's overall record merits either of these dispositions. AR 635–200, ¶ 10–8.

Although the regulations contemplate input from intermediate commanders, the regulations unequivocally repose final decisionmaking authority in the commanding officer exercising general court-martial authority. This officer is in no way bound to accept recommendations, either favorable or unfavorable to the member, made by intermediate commanders. His duty is to consider the member's potential for rehabilitation and to review his entire record before approving or disapproving the discharge request. AR 635–200, ¶ 10–4. The "entire record," presumably, includes any recommendations made by intermediate commanding officers.

The essence of Wolfe's claim is that favorable input from the intermediate commanders might have resulted in the issuance of an honorable or general discharge; the absence of the intermediate commanders' recommendations for the final decisionmaker's consideration assertedly vitiates the purpose of these required recommendations— to insure fully informed discharge dispositions—and constitutes a per se violation of Wolfe's rights requiring that the final approval be invalidated. Careful review of the Correction Board's function and of the Courts' duty to insure that the Correction Board faithfully and responsibly performs that function, however, compels us to reject Wolfe's claim.

## III.

▮ The Correction Board is vested with broad authority to "correct any military record ... when [it] considers it necessary to correct an error or remove an injus-

and hardly merit further discussion beyond what was provided in the proceedings below. For example, Wolfe continues to attach significance to the absence from his file of the charge sheet indicating he was subject to court-martial proceedings. This is frivolous. There has never been any doubt that charges were preferred against Wolfe at the time he sought the chapter 10 discharge. The chapter 10 discharge request form signed by Wolfe acknowledged that charges were preferred against Wolfe, and Wolfe's counsel conceded at oral argument that charges were indeed pending against Wolfe at the time he sought the chapter 10 discharge. Under these circumstances, the fact that the charge sheet was missing from his file when Wolfe sought administrative relief cannot provide a basis for relief.

Similarly, the record amply demonstrates that the timing of the physical examination does not provide a basis for relief. The final examination found him fit for discharge, and the Correction Board, on sufficient evidence, concluded that Wolfe had not suffered from any signifi-

cant health problems prior to his discharge. Under these circumstances, Wolfe's claim that the intermediate commanders may have recommended a medical discharge had they access to a medical report not yet in existence is fanciful, and rejection of this claim by the Correction Board was not arbitrary or capricious. And, of course, the timing of the physical examination does not provide any independent basis for relief.

Finally, to the extent Wolfe still seeks reversal of the substantive decision to discharge him under other than honorable conditions, we find this claim without merit. The decision regarding the type of discharge to issue under chapter 10, involving as it does considerations of morale, discipline and fitness for military service, is one within the primary competence of the military. We cannot, given the seriousness of the charges preferred against Wolfe, find that the substantive decision to discharge Wolfe under other than honorable conditions is arbitrary and capricious.

tice." 10 U.S.C. § 1552 (1982). Although this power is a discretionary one, the Correction Board is not without guidance. The Correction Board can only exercise its discretion for the benefit of the individual member. *Doyle v. United States*, 599 F.2d 984, 1000, 220 Ct.Cl. 285, *modified*, 609 F.2d 990, 220 Ct.Cl. 326 (1979), *cert. denied*, 446 U.S. 982, 100 S.Ct. 2961, 64 L.Ed. 2d 837 (1980). And the Correction Board's failure to so exercise its discretion, when properly called upon to do so, is subject to judicial review for arbitrariness and capriciousness. *Dilley v. Alexander*, 603 F.2d 914 (D.C.Cir.1979). It is apparent, then, that the Correction Board, and not the Courts, is the primary protector of individual members' rights against military overreaching.[4]

Wolfe places primary reliance on *Dilley v. Alexander*, 603 F.2d 914 (D.C.Cir.1979). In *Dilley*, Army Reserve officers were involuntarily released from active duty because they were not selected for temporary promotion by two successive promotion selection boards. *Id.* at 916. The first promotion board to "pass over" the Army Reserve officers did not include any Reserve officers, in violation of a statutory directive requiring Reserve officer representation on promotion selection boards convened to consider the promotion of Reserve officers. *Id.* at 920. To remedy this defect, the Army convened Relook Boards to reconsider the candidates for promotion, using the same data and criteria considered by the illegally constituted promotion selection boards. Before the Relook Boards performed this function, a properly constituted promotion selection board passed over for promotion the Army Reserve officers in question. *Id.* at 919.[5] The Relook Boards subsequently recommended that these Re-

serve officers not be promoted. *Id.* The Correction Board then concluded, that the Relook Board's recommendation of nonpromotion established that the absence of Reserve officers from the first board did not prejudice the passed over Reserve officers, and thus, having been twice passed over for promotion, they had to be involuntarily released from active duty. *Id.*

The Court rejected the Correction Board's approach as contrary to law. *Id.* at 925. The Correction Board had sought to detect the absence of what Congress had determined to be virtually and inherently undetectable: specific prejudicial effect from institutionalized bias. *See Doyle v. United States*, 599 F.2d 984, 996–998, 220 Ct.Cl. 285 (1979). Given the nature of the problem presented by institutionalized bias, Congress had devised an institutional remedy. The Correction Board was not free to disregard this remedy in favor of a fact-specific inquiry into whether anti-Reserve bias existed in fact in the particular case presented to it. *Dilley*, 603 F.2d at 922–24.

■ Given the intractable nature of institutionalized bias, it is not surprising that the *Dilley* court forcefully rejected the Army's attempt to dilute the institutional remedy devised by Congress. However, the court's declaration that consideration by a properly constituted promotion board was a "procedural entitlement" of Reserve officers, *id.* at 923–24, which the Army could not circumvent through alternative procedures purportedly designed to detect actual prejudice, was intended to do no more than perform the task at hand: protect the integrity of the institutional remedy designed by Congress to ameliorate institutional bias. Any extension of *Dilley* beyond this context is unwarranted.[6]

---

**4.** This is not as anomalous as it may initially appear. The Correction Board is a civilian board. The composition of the Correction Board and the availability of judicial review insures that individual rights will not be unduly trampled upon in the name of military efficiency, while effectuating the considered judgment that undue judicial interference with military operations must be avoided.

**5.** Although the second promotion board was properly constituted, it had before it the illegally

constituted promotion selection board's recommendation not to promote the Reserve officers in question, significantly decreasing their chances for promotion by the second board. 603 F.2d at 924 & n. 21.

**6.** This discussion is not intended to imply that congressional action is a prerequisite to the application of *Dilley*. Rather, it is to emphasize that it is the structural character of a particular procedural device designed to counter generic bias which is all-important, and which the Cor-

There is nothing in *Dilley* that can be construed, by any stretch of imagination, as signalling the adoption of a per se rule invalidating Correction Board action when it chooses not to correct a military record that follows procedures containing defect. Similarly, *Dilley* cannot be construed as altering the relationship between the Correction Board and the Courts. A Correction Board's determination that a procedural defect did not prejudice a member, and thus does not require it "to correct an error or remove an injustice," will be overturned only if such determination is arbitrary, capricious or contrary to law.

■ Even cursory examination of Wolfe's claim reveals that it does not fall within *Dilley*. Wolfe does not contend that the decision to discharge him under other than honorable conditions was made by an improperly constituted entity, nor could he. Final decisionmaking authority was vested in and exercised by, not a board carefully tailored to resist, or at least take into account, institutional or generic basis, but a single individual officer.[7] And it is undisputed that the proper individual officer made the final decision. Thus, this is not a challenge to the legal authority of the final decisionmaker *qua* final decisionmaker, as was the claim in *Dilley;* instead, Wolfe's claim goes to the sufficiency of the data base relied upon by the final decisionmaker.

Viewing the complaint in this light, we cannot find that the Correction Board's determination that the procedural irregularities complained of did not require it "to correct an error or remove an injustice" was arbitrary and capricious. Although

Major General Kelly did not have the intermediate commanders' recommendations on Wolfe's discharge request, he had a fair indication of their views: their recommendations to try the serious drug charges court-martial. Furthermore, Major General Kelly granted Wolfe a personal audience for about an hour before he approved the discharge request, a courtesy not required by the regulations and which allowed Wolfe to argue that his otherwise fine record merited favorable treatment. In sum, the omissions from the data base upon which Major General Kelly made his decision seem far less prejudicial than faulty data bases upon which other important military personnel decisions have been made, decisions which have survived judicial review.[8] *See, e.g., Knehans v. Alexander,* 566 F.2d 312 (D.C.Cir.1977) (Selection Board wrongfully considered adverse reports and failed to consider several complimentary letters of commendation in recommending nonpromotion, leading to officer's involuntary discharge; Correction Board's decision not to take corrective action upheld), *cert. denied,* 435 U.S. 995, 98 S.Ct. 1646, 56 L.Ed.2d 83 (1978).

### IV.

■ All other claims for relief, including but not limited to Wolfe's claim that procedural defects in the handling and reviewing of his discharge amount to a deprivation of due process, have been reviewed and found to be without merit.

### CONCLUSION

Summary judgment in favor of the Army was proper. The Correction Board's deci-

---

rection Board must honor. Indeed, *Dilley* found itself consistent with prior case law requiring strict adherence to regulations dictating the composition of military boards empowered to take or recommend personnel actions. 603 F.2d at 922 n. 15 (citing *Henderson v. United States,* 175 Ct.Cl. 690 (1966), *cert. denied,* 386 U.S. 1016, 87 S.Ct. 1373, 18 L.Ed.2d 455 (1967)). We do not, by our discussion here, intend to cast doubt on the continued vitality of *Henderson v. United States,* to the extent it is consistent with *Dilley* and this opinion.

7. Thus, comparing the input required of intermediate commanders here with the input re-

quired of Reserve officers by the statute under consideration in *Dilley,* is superficial and ultimately unsatisfying. The Reserve officers' absent input would have been that of co-equal members of the body vested with final decisionmaking authority. Here, the absent input would have been from subordinate officers to the one with final decisionmaking authority, who is free to accept or reject their recommendations.

8. Thus, any claim that the unavailability of documents for Major General Kelly's personal review warrants relief is denied.

sion not to take corrective action was not arbitrary, capricious or contrary to law. This holding should not be construed as an endorsement of the manner in which Wolfe's discharge request was processed by the field commanders. It is not our function to police these individuals and require that all of their personnel actions be taken in strict compliance with Army regulations. Today's holding simply adheres to long-standing precedent recognizing that Congress vested primary oversight and remedial responsibilities in this area in the Correction Board. *See Knehans v. Alexander,* 566 F.2d 312, 315 (D.C.Cir.1977). Because we are satisfied that the Correction Board acted within the broad mandate of 10 U.S.C. § 1552 when it declined to take corrective action, we uphold its determination and affirm the District Court.

*It is so ordered.*